Arthur J. LONGOBARDI, Plaintiff,

v.

UNEMPLOYMENT INSURANCE APPEAL
BOARD and Abex Corpora-
tion, Defendants.

Superior Court of Delaware,
New Castle.

Dec. 21, 1971.

Harvey B. Rubenstein, Wilmington, for plaintiff.

Charles K. Keil, Wilmington, for defendants.

OPINION

O'HARA, Judge.

This is an appeal from a decision of the Unemployment Insurance Appeal Board (Board) disqualifying one Arthur J. Lon-

gobardi (claimant) from benefits under the Delaware Unemployment Compensation Act.

Claimant was an apprentice pattern maker in the employ of the Abex Corporation from November 12, 1969 until September 4, 1970. Because of a general slowdown at Abex the company informed the claimant that it no longer needed his services as an apprentice pattern maker. Pursuant to a collective bargaining agreement between Abex and the United Steel Workers, the claimant was afforded the option of either accepting a layoff or "bumping" into a lower job classification thereby displacing the occupant thereof. The evidence is conflicting as to whether claimant was informed that he could bump into a semi-skilled classification as opposed to that of a laborer. There is no doubt, however, that claimant understood that his bumping prerogative could be exercised to displace one in the classification of laborer. Claimant decided to accept a layoff rather than undergo a change in employment status. At the time of layoff, the claimant was receiving $3.02 per hour. According to Abex, semi-skilled jobs were available to the claimant at approximately $2.79 per hour.

Subsequently the claimant sought benefits under the Unemployment Compensation Act. The Claims Deputy granted benefits. The Referee, on appeal, denied benefits pursuant to 19 Del.C. § 3315(1), concluding that the claimant's decision was a voluntary act of resignation without good cause. The Referee, after determining that semi-skilled classifications were available for the claimant to fill, premised his conclusion on the factual finding that the wage differential between classifications was insufficient to satisfy claimant's burden of proving good cause. The Board in the proceeding from which this appeal was taken affirmed the decision of the Referee adopting in their entirety the findings of the Referee.

The claimant contends that he did not voluntarily quit his job without

good cause under 19 Del.C. § 3315(1), but rather was laid off from his position as a pattern maker. In the alternative, counsel argues that 19 Del.C. § 3315(3) is controlling and that it was error for the Board not to make findings consistent with the statutory criterion set forth therein. 19 Del.C. § 3315 reads in pertinent part as follows:

> "§ 3315 Disqualification for benefits
> An individual shall be disqualified for benefits—
>
> (1) For the period of unemployment next ensuing after he has left his work voluntarily without good cause attributable to such work . . .
>
> (3) If he has refused to accept an offer of work for which he is reasonably fitted, or has refused to accept a referral to a job opportunity when directed to do so by a local employment office of this State or another State . . . No individual otherwise qualified to receive benefits shall lose the right to benefits by reason of a refusal to accept a referral or new work if—
>
> (D) The remuneration, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality."

Claimant takes the position with respect to his latter contention that since he was laid off from the work of pattern maker, he did not leave it voluntarily, no matter what other work is alleged to have been offered by Abex. Therefore, in fact and in law, § 3315(1) is not applicable to this case. Accordingly claimant draws the distinction between leaving "employment" and leaving "work" and asserts that "work" as used in § 3315(1) refers to a specific job rather than an employment status. Claimant suggests that the scope of § 3315(1) effects a disqualification from benefits only when an employee voluntarily without good cause resigns from a specific job. Under facts, as here, where the claimant

elects to terminate an employment relationship in preference to job reclassification, it is argued that § 3315(3) is pertinent.

To support the proffered distinction between "work" and "employment" in § 3315(1) the claimant notes that in 1955 the legislature amended § 3315(1) and substituted "work" for "employment" therein. 50 Del.Laws, Ch. 115, Sec. 5. In addition, claimant directs the Court's attention to 19 Del.C. § 3302(19) wherein "work" is defined as, "service, including service in interstate commerce, performed for wages or under contract of hire, written or oral, express or implied". It is thought by the claimant that taken together this sufficiently evidences a legislative intent that the term "work", as used in § 3315(1), is readily distinguishable from "employment" in that it is referrable to a specific classification of skills or operative acts.

This Court is not persuaded by claimant's arguments. The purported distinction drawn by claimant, upon which is premised his entire argument, appears to be rebutted by the expressed language of the statute. 19 Del.C. § 3302(10) expresses in clear language a contrary intent.

"§ 3302 Definitions

(10) 'Employment' means or includes—

(A) Service, including service in interstate commerce, performed for wages or under contract of hire, written or oral, express or implied."

It can be seen, therefore, that both "work" and "employment" are defined in the exact same language. Hence it must be concluded that the legislature did not intend the distinction urged by claimant. Therefore, claimant's argument that § 3315(1) is not pertinent to the instant situation must fall with its premises. Accordingly we find that the Board correctly directed its inquiry to deciding whether claimant had good cause to terminate his employment relationship with Abex because of a job re-classification.

The Court must now consider if the record justified claimant's disqualification under § 3315(1). In reviewing decisions of the administrative boards, this Court must ascertain whether the Board's findings and conclusions are supported by substantial evidence and free from legal error. Air Mod Corporation v. Newton, 215 A.2d 434 (Del.Supr.Ct.1965). Where this standard is satisfied, the Board's resolution of evidential and credibility conflicts is conclusive. Abex Corporation v. Todd, 235 A.2d 271 (Del.Super.Ct.1967). If there is substantial supporting evidence and no mistake in law, the Board's decision will be affirmed. A. H. Angerstein, Inc. v. Jankowski, 187 A.2d 81 (Del.Super.Ct. 1962).

The Board correctly ruled that the burden of proof to show "good cause" for voluntarily terminating employment is upon the claimant. O'Neal's Bus Service, Inc. v. Employment Secur. Com'n, 269 A. 2d 247 (Del.Super.Ct.1970); Smith v. Unemployment Compensation Board of Review, 181 Pa.Super. 185, 124 A.2d 707 (1956). Moreover, the Board was well within its discretion in determining, on the basis of conflicting testimony, that semi-skilled jobs were made available to the claimant at approximately $2.79 per hour. After having resolved this controversy in favor of Abex, the Board's decision that a 13 cent (4% percent) per hour reduction in wages did not constitute a compelling and necessitous reason for terminating his employment was in accord with the decided weight of authority. 100 A.L.R.2d 1057 Anno. "Right to unemployment compensation of one who quit because of pay reduction"; Fegely v. Unemployment Compensation Bd. of Review, 192 Pa.Super. 141, 159 A.2d 574 (1960); Erie Forge & St. Corp. v. Unemployment Comp. Bd. of R., 178 Pa.Super. 348, 115 A.2d 791 (1955); 96 A.L.R.2d 1125.

Plaintiff has mistakenly relied upon O'Donnell v. Unemployment Compensation Com'n, 3 Storey 162, 166 A.2d 720 (Del. Super.Ct.1961) to support his contention

that the employee who refuses to "bump" a fellow-employee, even though he is entitled to do this pursuant to agreement between his union and the employer, should, nevertheless, be considered as having left his employment voluntarily. The Court in that case, in fact, held that one who left his employment because of an interunion bumping regulation left his work voluntarily without good cause. It follows, therefore, that one who had the protection of a contract and the opportunity to retain his employment but chooses a layoff instead must be considered to have left his work voluntarily. The facts in the instant situation more strongly support the result reached by the *O'Donnell* Court.

For the reasons herein set forth, the Court concludes that the decision of the Board must be affirmed.

It is so ordered.