# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DELAWARE SOLID WASTE
AUTHORITY,

        Appellant,

v.

DELAWARE DEPARTMENT OF
NATURAL RESOURCES AND
ENVIRONMENTAL CONTROL,

        Appellee.

:
:
:
:
:
:
:
:
:
:
:
:
:

C.A. No. K19A-05-003 WLW

Submitted: October 1, 2019
Decided: January 22, 2020

## ORDER

Upon an Appeal from the Decision
of the Environmental Appeals Board.
*Affirmed.*

William J. Kassab, Esquire, Deputy Attorney General, attorney for the Appellee.

Michael W. Teichman, Esquire, Elio Battista, Jr., Esquire and Kyle F. Dunkle, Esquire, of Parkowski Guerke & Swayze, P.A., attorneys for Appellant.

WITHAM, R.J.

## INTRODUCTION

This is an appeal filed by the Delaware Solid Waste Authority ("DSWA") regarding a decision of the Environmental Appeals Board (the "Board") not to review the Notice of Violation ("NOV") issued by the Delaware Department of Natural Resources & Environmental Control ("DNREC") to DSWA. The Board determined that NOVs were not final decisions of the administrative agency and, therefore, were not subject to the appellate review. For the reasons set forth below, the decision of the Board is **AFFIRMED**.

## FACTUAL AND PROCEDURAL BACKGROUND

1. On October 2, 2018, DNREC issued the NOV 18-SW-65 to the DSWA.[1] The NOV contained allegations that DSWA had violated or was violating several terms of its Municipal Solid Waste Landfill permit (the "Permit") for its Sussex County Southern Solid Management Center (SSWMC).[2] DSWA then appealed the NOV to the Board on October 18, 2018.[3] DNREC filed a Motion to Dismiss the appeal, arguing that the Board had no jurisdiction to review the NOV because it was

---

[1] Appellee's Answering Brief (hereinafter "Answer. Brief") 1. The only NOV at issue is 18-SW-65. DSWA elected not to provide DNREC documents required by the NOV, but DNREC concluded that the violation has been corrected and issued a letter to DSWA on December 18, 2018, stating that the violation has been fixed to its satisfaction.

[2] *Id.*

[3] *Id.*

not a final decision by the administrative agency.[4] DSWA filed a Response, and the Board had a hearing on the matter on January 22, 2019.[5]

2. The Board agreed with DNREC and dismissed the appeal in a written "Decision and Final Order," which was published on April 23, 2019.[6] The Board determined that NOVs were not appealable.[7] The Board concluded that "[s]imply stated, NOVs do not substantially affect the agencies to whom they are issued."[8] DSWA filed a timely appeal from the Board's decision to this Court on May 17, 2019.[9] Both parties filed Briefs in support of their respective positions.

## PARTIES' CONTENTIONS

3. DSWA argues that NOVs constitute final agency actions that are subject to an appeal before the Board.[10] DSWA states the definitively-worded NOV represents the consummation of the Department's decision-making process, and it also has legal

---

[4] *See Id.* at 1-2.

[5] *See* EAB Decision and Final Order 1. Both parties mistakenly referred to the date of the hearing as January 22, 2018 in their submissions.

[6] Appellant's Opening Brief (hereinafter "App. Brief") 2. Appellee mistakenly referred to the date the Decision was published at April 23, 2017.

[7] *Id.*

[8] EAB Decision and Final Order 6.

[9] Answer. Brief 2.

[10] Appellant's Opening Brief (hereinafter "App. Brief") 3.

consequences for DSWA, such as reputation harm, vulnerability to the enhanced enforcement, and potential designation as a "chronic violator."[11] DSWA further argues that it meets the standing requirements because it is directly and substantially affected by DNREC's NOV.[12]

4. DNREC argues that NOVs are not final agency actions because no sufficient legal consequences result from them, and because they do not substantially affect agencies they are issued to.[13] DNREC also points out that the Board was right in concluding that the opposite result would lead to a possibility that a violator can appeal the same issue twice to the same appellate body.[14] DNREC states that the Board's reasoning is "sound and consistent with Delaware and federal precedent on what qualifies as final agency action."[15]

## STANDARD OF REVIEW

5. This Court is limited in its review to "a determination of whether the Board's decision is supported by substantial evidence and free from legal error."[16]

---

[11] *Id.*

[12] *See Id.*

[13] *See* Answer. Brief 7.

[14] *Id.* at 8.

[15] *Id.*

[16] *Longobardi v. Unemployment Ins. Appeal Bd.*, 287 A.2d 690, 692 (Del. Super. 1971) (citing *Air Mod Corporation v. Newton*, 215 A.2d 434 (Del.Supr.Ct.1965)).

Substantial evidence is that "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[17] However, the Court reviewed questions of law and statutory interpretation *de novo*.[18]

## DISCUSSION

6. In this case, the NOV issued to DSWA does not constitute a final decision of the Secretary that can be appealed to the Board. Under Delaware law, "[w]henever a final decision of the Secretary concerning any case decision, included but not limited to any permit or enforcement action is appealed, the Board shall hold a public hearing…"[19] The action by the Secretary also includes the action by the Secretary's "duly authorized designee."[20] Therefore, the actions by the Administrator of DNREC fall within the category of the Secretary's actions. Both parties agree that no statutory law in Delaware defines what constitutes "a final decision."[21] The parties agree that this case involves a determination of whether NOVs constitute final case decisions.[22]

---

[17] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (quoting *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966)).

[18] *Delaware Dep't of Nat. Res. & Envtl. Control v. Sussex Cty.*, 34 A.3d 1087, 1090 (Del. 2011).

[19] 7 *Del. C.* § 6008(b).

[20] 7 *Del. C.* § 6002(48).

[21] *See* App. Brief 12; *see also* Answer. Brief 10.

[22] *See* Answer. Brief 9.

Both parties further agree that the Supreme Court decision in *Bennett* should govern the determination of finality of an administrative decision that could be appealed to the Board.[23] Delaware courts adopted the reasoning of federal case law when it comes to the determination of what an appealable final action is.[24]

7. *Bennett* established a two-part test to determine the finality of a decision: One - the action must represent the consummation of the agency's decision-making process, and two - the action must either determine rights/obligations or have legal consequences.[25] In this case, it appears to the Court that NOVs fail to meet both prongs of the *Bennett* test. First, NOVs are not consummations of the decision-making process because, despite the definitive language used in them, they do not constitute the closure of the administrative procedure, and the Department continues to review the same violations asserted in NOVs after the issuance of the Notices.

8. Furthermore, NOVs can also be followed by the Secretary's orders, which do, in fact, constitute the consummation of a decision-making process. Another point courts can consider when evaluating the finality of a decision is "whether the process of administrative decision-making has reached a stage where judicial review will not

---

[23] App. Brief 15, *see* Answer. Brief 7; *see Bennett v. Spear*, 520 U.S. 154 (1997).

[24] *See State, Office Mgmt. & Budget v. Pub. Emp't Relations Bd. (PERB)*, 2010 WL 1732894 at *1 (Del. Super. Apr. 29, 2010).

[25] *Bennett*, 520 U.S. at 177-78.

disrupt the orderly process of adjudication."[26] In this case, it appears that the process would be disrupted because reviewing the NOV before the Secretary issues an order for the same violation could create confusion and a possibility of appealing the same decision twice. As opposed to *the order* at issue in *Sackett*, for example, NOVs are subject to further agency assessment.[27] In *Sackett*, as opposed to this case, the order that the Court determined to be final was "not subject to further agency review."[28]

9. NOVs also do not meet the second prong of the *Bennett* test. In this case, DSWA did not follow the directions provided in the NOV and was not reprimanded in any way for that. On the contrary, DNREC later determined that, despite DSWA non-compliance with the NOV's directions, DSWA was no longer in violation.[29] Based on that, it cannot be said that the NOV created a right or obligation.

10. Furthermore, the NOV did not create sufficient legal consequences for DSWA. A real threat of criminal or civil penalty, for instance, is an example of legal consequences.[30] In this case, however, without further action (Secretary's order) no

---

[26] *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970) (citing *ICC v. Atlantic Coast Line R. Co.*, 383 U.S. 576, 602 (1966); *Rochester Telephone Corp. v. United States*, 307 U.S. 125, 143 (1939)).

[27] *Sackett v. E.P.A.*, 566 U.S. 120 (2012).

[28] *Sackett,* 566 U.S. at 127 (2012).

[29] Answer. Brief 4.

[30] *See Frozen Food Express v. US*, 351 U.S. 40, 44 (1956).

penalty is imposed or threatened, and DSWA's legal regime is not changed. The number of violations mentioned in 7 *Del. C.* § 7904(b) is only one of the many factors to consider when determining whether an agency deserves the "chronic violator" designation. Moreover, one of the factors that must be considered when the Department takes violations into account is "whether such [alleged] violations have been found or proven in concurrent or subsequent proceedings or public hearings."[31] Therefore, if the violations are not proven through a further process that involves a final decision regarding them, the existence of the allegations of such violations can be mitigated or even nullified by this provision.

11. According to 7 *Del. C.* § 6005, sanctions may be imposed on violators.[32] However, it appears that the violations must be the final ones, such as Secretary's orders, to constitute grounds for sanctions.[33] Even though DNREC's "Compliance and Enforcement Response Guide" ("CERG") mentions NOVs and their effect, the guide is a policy document that does not make NOVs mandatory prerequisites for an administrative penalty.

12. Furthermore, the guide provides that "[f]ailure to comply with [an] NOV is not itself a violation of law subject to a penalty, and thus DNREC may not assess a penalty for violation of [an] NOV independent of the violations cited within the

---

[31] 7 *Del. C.* § 7904(c)(10).

[32] *See* 7 *Del. C.* § 6005.

[33] *See Id.*

NOV, as it may do for violating an order."[34] The guide goes on to state that "[a]n Administrative Order, however, differs from a NOV in content and significance, and consequently, an order issued unilaterally by DNREC is subject to adjudicatory appeal."[35] Therefore, it is apparent that NOVs and orders are treated differently when it comes to their possible consequences.

13. Moreover, nothing in 7 *Del. Admin C.* § 1301, which addresses solid waste and the issuance of permits, stands for the proposition that the existence of NOVs, without more, will make it harder for an entity to get a permit. As to the reputation harm, it does not constitute a sufficient *legal* consequence in this case. The injury to reputation, which resulted from the agency's actions, does not warrant immediate judicial review.[36] Judicial review is appropriate, on the other hand, when the plaintiff suffers direct and immediate impact from the action that is being appealed.[37] Furthermore, reputation harm is considered a collateral non-legal consequence in other contexts.[38]

14. Additionally, in this case, it appears that DSWA also lacks standing to

---

[34] DNREC, *Compliance Enforcement Response Guide* 32 (Dep. 2002).

[35] *Id.*

[36] *Texaco, Inc. v. Dep't of Energy*, 490 F. Supp. 874, 889 (Del. 1980).

[37] *Id.* at 888.

[38] See *Harvell v. Norris*, 2016 WL 3890571 at *4 (N.C. Ct. App. July 19, 2016) (citing *Smith v. Smith*, 549 S.E.2d 912, 914 (2001)).

challenge the NOV. Here, the question of standing relates to the same issue discussed above – whether the NOV constituted a final decision of the administrative agency *that substantially affected DSWA's rights*. Reading 7 *Del. C.* § 6008 *in its entirety* helps understand that for a party to have standing to challenge an administrative decision, a party's interests must be substantially affected by such final decision.[39] Therefore, in this case, based on the same analysis of finality, DSWA does not have standing to challenge the NOV because non-final decisions do not affect it substantially. Moreover, finding NOVs to be final decisions appealable to the Board would disrupt the administrative process in place and open the doors to the possibility of too many appeals based on different types of administrative actions agencies engage in routinely as a part of continuous procedures.

## CONCLUSION

For all of the foregoing reasons, the decision of the Board is **AFFIRMED**. **IT IS SO ORDERED**.

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh

---

[39] *See* 7 *Del. C.* § 6008(a)-(b); *see also Booth v. Garvin*, 2019 WL 462486 at *3-4 (Del. Super. Feb. 6, 2019).